## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE MARIE KREILACH, | ) | Case No. 1:20-cv-00875 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Carmen E. Henderson |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Michelle Marie Kreilach applied for social security disability benefits. The Commissioner denied her application, both initially and on reconsideration. Plaintiff requested a hearing, after which the administrative law judge also denied her application. She appealed, but the appellate council declined review, rendering final the Commissioner's denial. Then, Plaintiff sought review in federal court. The Magistrate Judge recommends reversing the Commissioner's decision. The Commissioner objects to that recommendation. For the reasons that follow, the Court **SUSTAINS** the Commissioner's objection (ECF No. 19), **DECLINES TO ADOPT IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 18), and **AFFIRMS** the Commissioner's denial of Plaintiff's application for disability benefits.

## FACTUAL AND PROCEDURAL HISTORY

In April 2017, Ms. Kreilach applied for social security disability insurance benefits, alleging disability beginning in May 2014. (ECF No. 12, PageID #225.) The

Commissioner denied her application initially and on reconsideration. (*Id.*, PageID #178 & #185.) Then, Ms. Kreilach requested a hearing before an administrative law judge, who also denied her application. (*Id.*, PageID #75 & #193.)

### A.     Relevant Medical Evidence

Relevant to the issues before the Court are two mental impairment questionnaires and the opinions of the State agency psychological consultants.

### A.1.     2017 Questionnaire (Nurse Kauffman and Dr. Hunt)

In October 2017, Kelley Kauffman, C.N.P., and Andrew Hunt, M.D., completed a mental impairment questionnaire check-box form. (ECF No. 12, PageID #887–88.) They indicated that they had monthly contact with Ms. Kreilach since March 2016. (*Id.*, PageID #887.)   Under clinical findings, Kauffman and Dr. Hunt identified "avoidance, detachment, restricted range of affect, foreshortened sense of future, hypervigilance, flashbacks/intrusive memories, nightmares, frustration intolerance, sleep disturbance, [and being] easily startled." (*Id.*)

By checking boxes on the form, Kauffman and Dr. Hunt opined that Ms. Kreilach had "no useful ability to function" in areas such as completing work without interruptions from psychologically based symptoms, performing at a consistent pace without unreasonable rest periods, and responding appropriately to changes in the work setting. (*Id.*, PageID #887–88.) They opined that Ms. Kreilach was "unable to meet competitive standards" in carrying out detailed instructions, maintaining attention and concentration, performing activities within a schedule, and interacting appropriately with the general public. (*Id.*) Further, they anticipated that Ms. Kreilach's impairments would cause her to be absent from work more than

four days per month and that she would be off task more than twenty-five percent of an eight-hour workday.  (*Id.*, PageID #888.)

### A.2.   2018 Questionnaire (Nurse Brager and Dr. Tate)

In August 2018, David Brager, C.N.P., and Audrey Tate, a licensed professional counselor, completed a check-box mental impairment questionnaire. (*Id.*, PageID #643–44.)   They indicated that Brager had monthly contact with Ms. Kreilach, and Dr. Tate had contact every two weeks.  (*Id.*, PageID #643.)  Under diagnoses, they indicated major depression, panic disorder, and posttraumatic stress disorder.  (*Id.*)  Under clinical findings, they indicated that Ms. Kreilach had severe anxiety and panic episodes.  (*Id.*)

By checking boxes on the form, Brager and Dr. Tate opined that Ms. Kreilach had "no useful ability to function" in remembering or carrying out detailed instructions, working in proximity to others, completing work without interruptions from psychologically based symptoms, performing at a consistent pace without unreasonable rest periods, and remembering work procedures.   (*Id.*, PageID #643–44.)  They opined that Ms. Kreilach was "unable to meet competitive standards" in remembering and carrying out simple instructions, maintaining attention and concentration, managing attendance and punctuality, sustaining an ordinary routine, and interacting appropriately with the general public.  (*Id.*)  Further, they anticipated that Ms. Kreilach's impairments would cause her to be absent from work at least once a week and to be off task for three out of eight hours during the workday. (*Id.*, PageID #644.)

### A.3.    State Agency Consultants Dr. Waggoner and Dr. Edwards

In July 2017, State agency psychologist Cynthia Waggoner, Psy.D., completed a mental residual functional capacity assessment of Ms. Kreilach.  Dr. Waggoner opined that Ms. Kreilach could adapt to infrequent changes in the workplace and could have brief, superficial interactions with coworkers.  (*Id.*, PageID #155–56.) Further, Dr. Waggoner opined that Ms. Kreilach should not work with the public and that her work should not require a fast pace, high production demands, or sustained concentration.  (*Id.*, PageID #155.)

On reconsideration, in October 2017, State agency psychologist Joseph Edwards, Ph.D., also completed a mental residual functional capacity assessment of Ms. Kreilach.  In significant part, Dr. Edwards agreed with Dr. Waggoner's assessment.  However, Dr. Edwards made some changes to the functional assessment based on evidence that indicated that Ms. Kreilach's anxiety was worsening.  (*Id.*, PageID #173.)  Dr. Edwards opined that Ms. Kreilach was capable of understanding and remembering one to three step instructions, performing one to three step routine tasks, and adapting when major changes are explained in advance and implemented gradually to allow for adjustment.  (*Id.*, PageID #172–73.)  In addition to agreeing that Ms. Kreilach's work should not require a fast pace, high production demands, or sustained concentration, Dr. Edwards opined that the work "[m]ay require occasional flexibility for shifts and breaks due to symptoms fluctuation."  (*Id.*, PageID #172.)

### B.    Administrative Law Judge's Decision

After hearing testimony from Ms. Kreilach and a vocational expert and considering the evidence presented, an administrative law judge issued a written

decision denying Ms. Kreilach's application.  (*Id.*, PageID #75.)  In that decision, the ALJ outlined and conducted the customary five-step inquiry to determine whether Ms. Kreilach was disabled under Section 1614(a)(3)(A) of the Social Security Act.  (*Id.*, PageID #78–93.)

At step one, the ALJ found that Ms. Kreilach has not engaged in substantial gainful activity since the alleged onset date of May 16, 2014.  (*Id.*, PageID #81.)  At step two, the ALJ found that Ms. Kreilach had several severe impairments, including carpal tunnel syndrome, gastroesophageal reflux disease, asthma, depression, anxiety, and posttraumatic stress disorder.  (*Id.*)  The ALJ also found that Ms. Kreilach had irritable bowel syndrome but that it was not a severe impairment.  (*Id.*)  At step three, the ALJ found that Ms. Kreilach did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  (*Id.*, PageID #82.)

As to step four, the ALJ found that Ms. Kreilach had the residual functional capacity to perform light work, with several exceptions:

> The claimant can frequently operate left hand controls.  The claimant can frequently handle with the left and frequently finger with the left. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  The claimant can occasionally balance, stoop, kneel, crouch, and crawl.  The claimant can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle.  The claimant can frequently be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and extreme heat.  The claimant is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work).  The claimant is limited to simple work related decisions in using her judgment and dealing with changes in the work setting.  The

5

> claimant is able to occasionally interact with supervisors and coworkers
> and never intact with the public.

(*Id.*, PageID #84.)  In determining Ms. Kreilach's residual functional capacity, the ALJ considered Ms. Kreilach's testimony and the medical evidence and opinions in the record, including the 2017 and 2018 mental impairment questionnaires and the opinions of the State agency psychological consultants.

### B.1.   2017 Questionnaire

The ALJ considered the opinion of Nurse Kauffman and Dr. Hunt contained in the 2017 mental impairment questionnaire.  (*Id.*, PageID #89.)  The ALJ found their opinion unpersuasive because it lacked support from Ms. Kreilach's treatment records, which he determined generally indicated mild to mostly moderate symptoms of anxiety, depression, and posttraumatic stress disorder.  (*Id.*)  Further, the ALJ found the opinion unpersuasive because it was inconsistent with the totality of the evidence showing improvement in Ms. Kreilach's symptoms with the prescribed medicine.  (*Id.*)

### B.2.   2018 Questionnaire

The ALJ also considered the opinion of Nurse Brager and Dr. Tate contained in the 2018 mental impairment questionnaire.  (*Id.*, PageID #90.)  Similarly, the ALJ found their opinion unpersuasive because it lacked support in the treatment records and was inconsistent with the totality of the evidence showing improvement in Ms. Kreilach's symptoms.  (*Id.*)

### B.3.   State Agency Psychological Consultants

The ALJ considered the opinions of State agency psychological consultants Dr. Waggoner and Dr. Edwards.  In summarizing the opinions of the two consultants, the ALJ noted Dr. Edwards' opinion that Ms. Kreilach's work might require occasional flexibility for shifts and breaks due to symptoms fluctuation.  (*Id.*)  The ALJ found their opinions persuasive because they were consistent with the results of the psychological consultative examination, Ms. Kreilach's improvement with prescribed treatment, and Ms. Kreilach's activities of daily living.  (*Id.*)

*     *     *

Finally, at step five, the ALJ determined that Ms. Kreilach was unable to perform any past relevant work.  (*Id.*, PageID #91.)  However, the ALJ determined that Ms. Kreilach can perform other jobs that exist in significant numbers in the national economy given her age, education, work experience, and residual functional capacity.  (*Id.*)  Therefore, the ALJ found that Ms. Kreilach was not disabled and denied her application.  (*Id.*, PageID #92.)  The Appeals Council declined further review, rendering the ALJ's decision final on March 23, 2020.  (*Id.*, PageID #67.)

### C.   Report and Recommendation

Ms. Kreilach timely filed this action on April 23, 2020, seeking judicial review pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)  The Magistrate Judge issued a report and recommendation that the Court reverse and remand the ALJ's decision denying Ms. Kreilach's application.  (ECF No. 18.)  On appeal, Plaintiff argued that substantial evidence did not support the ALJ's residual functional capacity determination because (1) the ALJ failed to include all of Plaintiff's mental

7

limitations, and (2) the ALJ erred in analyzing the medical opinion evidence. (ECF No. 13, PageID #: 935−945.)

### C.1.    Mental Limitations

The Magistrate Judge noted that, despite finding Dr. Edwards' opinion persuasive, the ALJ did not include in the residual functional capacity the limitation contained in Dr. Edwards' opinion that Plaintiff's work "may require occasional flexibility for shifts and breaks due to symptoms fluctuation." (ECF No. 18, PageID #989–90.)  Further, the ALJ did not explain the omission of this limitation. (*Id.*, PageID #990.)  The Magistrate Judge agreed with Plaintiff that this omission is significant because—as the vocational expert testified—an individual with Plaintiff's residual functional capacity and that additional limitation would not be able to sustain employment. (ECF No. 12, PageID #140; ECF No. 18, PageID #993.)

In interpreting Dr. Edwards' opinion, the Magistrate Judge looked to the Social Security Administration's definition of the term "occasional." (ECF No. 18, PageID #992 n.5.)  Under that definition, "occasional" means occurring up to one-third of the time. (*Id.*)  Because Dr. Edwards is a State agency psychologist, the Magistrate Judge viewed him as an expert in the evaluation of the medical issues in disability claims under the Social Security Act.  Accordingly, the Magistrate Judge imputed the agency definition of "occasional" to Dr. Edwards' use of the term. (*Id.*)  Interpreting Dr. Edwards' opinion in light of that definition, the Magistrate Judge determined that the limitation was sufficiently precise to require that it be included in the residual functional capacity. (*Id.*)

Because the ALJ's failure to provide an explanation for the omission of the limitation prevented a meaningful review of whether substantial evidence supported his decision, the Magistrate Judge concluded that remand is required.

### C.2.    Analysis of Treating Source Opinions

Because the Magistrate Judge determined that remand is necessary, she did not express an opinion whether the ALJ's analysis of the medical opinion evidence was so deficient as to require remand.  (*Id.*, PageID #994.)

### D.    The Commissioner's Objection

The Commissioner timely objected to the Magistrate Judge's Report and Recommendation.  (ECF No. 19.)  The Commissioner objects that the ALJ was not required to adopt every limitation from Dr. Edwards' opinion, nor was he required to explain why he did not adopt the limitation.  (*Id.*, PageID #995.)

## ANALYSIS

The Court reviews de novo the portions of a magistrate judge's report and recommendation to which specific objections are made.  28 U.S.C. §636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation."  *Scott v. Saul*, No. 1:19-CV-2393, 2021 WL 9169936, at *5 (N.D. Ohio May 14, 2021).

Where a party objects, review is limited to determining whether substantial evidence in the record supports the Commissioner's decision to reviewing any legal errors.  *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th 2003).  "Substantial evidence" is more than a scintilla, but less than a preponderance.  *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.*  If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different decision on the same facts.  42 U.S.C. § 405(g).

## I.    Mental Health Limitations

The Commissioner objects to the Magistrate Judge's conclusion regarding Dr. Edwards' opinion about Ms. Kreilach's limitations.  (ECF No. 19, PageID #995.) The Commissioner argues that the ALJ's decision complied with the controlling regulations and that the ALJ was not required to explain each limitation adopted or not adopted from Dr. Edwards' opinion.  (*Id.*, PageID #997.)

### I.A.    Governing Law

Residual functional capacity is a determination expressly reserved for the Commissioner.  20 C.F.R. § 404.1527(d)(2).  Under the law of this Circuit, an ALJ is not required to adopt every limitation that State agency psychologists suggest.  "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."  *Reeves v. Commissioner of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).  In *Reeves*, the court

10

held that the ALJ did not err by omitting a limitation because only one of the two State agency consultants described the limitation and the limitation lacked substantial support elsewhere in the record—even though the ALJ accorded great weight to the consultant's opinion and found that it was supported by the record as a whole.  *Id.*

Plaintiff takes the position that, if the ALJ omits from the residual functional capacity a limitation contained in an opinion that the ALJ otherwise finds persuasive and consistent with the record, the ALJ must provide an explanation for the omission. (ECF No. 13, PageID #935–36; ECF No. 20, PageID #1003.)  The Magistrate Judge agreed with Plaintiff's position.  (ECF No. 18, PageID #990.)  To support this position, the Magistrate Judge relied on two cases.

In the first, *Perrine v. Berryhill*, No. 1:18-cv-49, 2019 WL 1331597, at *7 (N.D. Ohio Mar. 25, 2019), the State agency psychologists opined that the claimant should have only superficial contact with others.  Despite according their opinions great weight, the ALJ omitted this limitation for superficial contact from the residual functional capacity, instead limiting the claimant to "occasional" interaction.  *Id.*  The court remanded because it found that the ALJ seemingly adopted the limitation for superficial contact but then failed to incorporate it, without explanation, and that there was no clear medical opinion evidence discrediting the limitation.  *Id.*  In the second case, *Queen v. Commissioner of Social Security*, No. 2:16-cv-1082, 2017 WL 6523296, at *9–10 (S.D. Ohio Dec. 21, 2017), the ALJ similarly omitted without explanation a limitation from a State agency consultant's opinion to which the ALJ

accorded great weight, warranting remand. Neither the *Perrine* nor the *Queen* Court addressed or distinguished *Reeves*.

In a case factually similar to this one, this court took a similar approach. *See Kreze v. Berryhill*, No. 1:17-cv-01254, 2018 WL 3045097, at *7 (N.D. Ohio June 7, 2018) (report and recommendation). In *Kreze*, the ALJ accorded significant weight to the opinions of State agency psychological consultant Dr. Edwards (the same consultant at issue here) and a second consultant. *Id.* Each opined that the claimant could perform simple work in settings with "occasional flexibility for shifts and breaks," but the ALJ omitted that limitation from the residual functional capacity. *Id.*

Holding that this omission was error, the *Kreze* Court distinguished the case from *Reeves* for two reasons. First, the court determined that substantial evidence supported the limitation because both consultants gave opinions supporting the limitation, the ALJ found their opinions generally consistent with the record, and significant mental impairments appeared in the record. *Id.* at *8. Second, the court noted that the ALJ quoted the limitation verbatim and appeared to intend to adopt it as part of the determination of residual functional capacity. *Id.* Accordingly, the court remanded the case. *Id.* at *9; *Kreze v. Commissioner of Soc. Sec. Admin.*, No. 1:17-cv-1254, 2018 WL 3046474 (N.D. Ohio June 20, 2018) (adopting the report and recommendation without objection).

Similarly, other courts hold that an ALJ erred by omitting a limitation without explanation despite according the opinion containing it great weight. *See, e.g., Cooper*

*v. Commissioner of Soc. Sec.*, No. 2:18-cv-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018), *report and recommendation adopted*, No. 2:18-CV-67, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019) (omitting limitation to superficial contact with coworkers); *Howard v. Commissioner of Soc. Sec.*, No. 3:14-cv-364, 2015 WL 8213614, at *3 (S.D. Ohio Dec. 9, 2015) (omitting limitation that claimant "may need an occasional extra break to calm herself").

In opposition to Plaintiff's position, the Commissioner contends that the ALJ is only required to articulate whether an opinion as a whole is consistent with the record and is not required to articulate his consideration of each statement contained within it. (ECF No. 19, PageID #996.) By finding Dr. Edwards' opinion persuasive and consistent with the record as a whole, according to the Commissioner, the ALJ satisfied that requirement. (*Id.*, PageID #996–97.) Under the controlling regulations, the Commissioner argues that the ALJ had no further obligation to adopt each statement within Dr. Edwards' opinion or to explain why he did not adopt it. (*Id.*, PageID #995.)

However, as a general matter, an ALJ is obligated to build an "accurate and logical bridge" from the evidence to his conclusions. *Ripley v. Commissioner of Soc. Sec.*, 415 F. Supp. 3d 752, 767 (N.D. Ohio 2019). In the context of an omitted limitation, whether the omission is error depends on the nature of that limitation. Specifically, the pertinent question in examining a potential limitation is whether the medical evidence compels a specific, concrete restriction on the claimant's ability such that the ALJ was required to include it in the residual functional capacity or explain

13

its omission.  *See Walker v. Saul*, No. 1:20-cv-0504, 2022 WL 1134300, at *4–5 (N.D. Ohio Apr. 18, 2022) (citing *Smith-Johnson v. Commissioner of Soc. Sec.*, 579 F. App'x 426, 436–37 (6th Cir. 2014), and *Kepke v. Commissioner of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016)).

For instance, in *Scott v. Saul*, No. 5:18-cv-2897, 2020 WL 2393155, at *1 (N.D. Ohio May 12, 2020), the court determined that the ALJ did not err by omitting from the residual functional capacity the need for a flexible break schedule.  In part, the claimant relied on a statement by Dr. Edwards (again, the same consultant here) that the claimant "would benefit from a flexible break schedule due to symptom fluctuations."  *Id.* at *3.  The court reasoned that Dr. Edwards' opinion, and the other medical opinions referencing flexibility, were not definitive about the meaning of or need for such flexibility.  *Id.*  Therefore, the court determined that the ALJ did not err by omitting it.  *Id.*

Similarly, in *Overstreet v. Saul*, No. 1:20-cv-00645, 2021 WL 5017754, at *15 (N.D. Ohio May 17, 2021), the court held that the ALJ did not err by omitting from the residual functional capacity the opinion of the State agency reviewing psychologists regarding flexibility in scheduling breaks.  The court reasoned that needing flexible break times was not a concrete functional limitation that must be accounted for in the residual functional analysis.  *Id.*; *Overstreet v. Commissioner of Soc. Sec.*, No. 1:20-cv-00645, 2021 WL 4145167 (N.D. Ohio Sept. 13, 2021) (adopting the report and recommendation).

Other courts also hold that it is not necessarily error for an ALJ to omit from the residual functional capacity an assessed limitation, even if that limitation is contained in an opinion the ALJ otherwise found persuasive. *See Smith v. Commissioner of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013), *aff'd* (Jan. 30, 2014) (holding no error because the ALJ sufficiently described the weight given to an opinion and was not legally required to explain limitations that were not incorporated into the residual functional capacity); *Straley v. Commissioner of Soc. Sec.*, No. 3:12-cv-442, 2012 WL 7809072, at *11 (N.D. Ohio Dec. 27, 2012), *objections sustained on other grounds*, No. 3:12-cv-442, 2013 WL 1284151 (N.D. Ohio Mar. 27, 2013) (holding that the ALJ was not required to adopt the consultative examiner's assessed limitations unless they were based on objective medical evidence).

### I.B.    Application

Against this background, the Court turns to the omitted limitation at issue in this case.  In full, Dr. Edwards opined that Plaintiff's work: "May require occasional flexibility for shifts and breaks due to symptoms fluctuation."  (ECF No. 12, PageID #172.)  The other State agency consultative psychologist who initially reviewed Plaintiff's claim did not assess this limitation.  (*Id.*, PageID #155.)

As an initial matter, Plaintiff and the Magistrate Judge construed "occasional" as a term of art, rather than ascribing a layperson's definition.  (ECF No. 13, PageID #936; ECF No. 18, PageID #993 n.5.)  According to Social Security Rulings, "occasional" means up to one-third of the workday.  (ECF No. 18, PageID #993 n.5.) Based on this definition of "occasional," the vocational expert testified that, if Plaintiff

is limited to requiring "occasional flexibility" in her work, there would be no work Plaintiff could perform. (ECF No. 12, PageID #140.)   In ascribing the agency definition of the term, the Magistrate Judge reasoned that Dr. Edwards is an expert in the evaluation of disability claims under the Social Security Act.  (ECF No. 18, PageID #992 n.5.)   However, while the ALJ could have reasonably construed Dr. Edwards' use of the term "occasional" as employing the agency definition, the ALJ was not obligated to construe it in this way.

In considering whether Dr. Edwards' opinion constitutes a concrete, specific limitation, the Court looks to other cases that have considered claimant's need for flexibility.  In *Scott*, 2020 WL 2393155, at *3, and in *Overstreet*, 2021 WL 5017754, at *15, the courts determined that the claimant's need for a flexible break schedule was not a concrete limitation that must be included in the residual functional capacity. In both cases, the opinions limited the claimants to a "flexible break schedule" or "flexible break times."   Dr. Edwards' statement in this case is less precise and restrictive than these limitations because it expressed his opinion that Plaintiff may only occasionally require flexibility in scheduling breaks and shifts.   Whether occasionally is defined colloquially or as a term of art, Dr. Edwards' statement did not extend to requiring flexibility always, as did the limitations in *Scott* and *Overstreet*. Further, Dr. Edwards' statement expressed no need for additional breaks.  *Cf. Howard*, 2015 WL 8213614, at *3 (limitation that the claimant "may need an occasional extra break").

16

In contrast, in *Kreze*, 2018 WL 3045097, at *7, the court determined that the ALJ was required to include the limitation of requiring "occasional flexibility for shifts and breaks" in the residual functional capacity.  As in *Kreze*, the ALJ in this case quoted verbatim the opinion regarding flexibility in his summary of Dr. Edwards' opinion. However, this case differs from *Kreze* in several important ways.  For one, here, only one of the two State agency psychological consultants gave the opinion requiring flexibility.

More significantly, while the *Kreze* Court determined that the record showed significant mental impairments and that substantial evidence supported the limitation, the same is not apparent in this case.  Aside from Dr. Edwards' opinion, Plaintiff points to no other medical opinion that assessed a restriction about requiring flexibility.  (*See* ECF No. 13, PageID #935–37; ECF No. 20, PageID #1001.)  As to medical evidence supporting Dr. Edwards' opinion, Plaintiff references the medical evidence generally, which overall shows Plaintiff's worsening anxiety and lack of coping skills.  (ECF No. 20, PageID #1001; ECF No. 13, PageID #941–44.)

The Magistrate Judge found that the evidence Plaintiff presented supported Plaintiff's "need to remove herself from situations in order to cope."  (ECF No. 18, PageID #992 n6.)  However, the ALJ considered this evidence about Plaintiff's mental health and included mental limitations in the residual functional capacity based on Plaintiff's anxiety, depression, and posttraumatic stress disorders.  (ECF No. 12, PageID #86–87.)  Specifically, the ALJ incorporated limitations relating to concentration and persistence by limiting Plaintiff to performing simple, routine, and

repetitive tasks, but not at a production rate pace as in assembly line work.  Based on his review of the evidence, the ALJ concluded that Plaintiff's mental disorders did not warrant any other limitation.  (*Id.*, PageID #88.)

The limitations in the residual functional capacity are consistent with jobs such as housekeeper or cleaner, mail sorter, and inspector, which the vocational expert determined Plaintiff could perform.  (ECF No. 12, PageID #92 & #138.)  None of these positions involves working on an assembly line, where everyone must take breaks at the same time or a specific time.  *See Scott*, 2020 WL 2393155, at *3. Plaintiff does not identify medical evidence that compels the inclusion of an additional limitation about flexibility.  Rather, the limitations the ALJ included in the residual functional capacity appropriately accounted for Plaintiff's limitations arising from her mental disorders.  Accordingly, the Court concludes that the ALJ did not err by omitting the flexibility limitation from the residual functional capacity.

## II.    Weighing of Medical Opinions

In her brief, Plaintiff argues that the ALJ erred in his analysis of medical opinion evidence.  (ECF No. 13, PageID #937–45.)  Specifically, Plaintiff appealed the ALJ's analysis of the 2017 questionnaire, which Nurse Kauffman and Dr. Hunt completed, and the 2018 questionnaire, which Nurse Brager and Dr. Tate completed. Because the Magistrate Judge determined that remand was necessary on other grounds, the Magistrate Judge did not express an opinion on the ALJ's analysis of these medical opinions.  (ECF No. 18, PageID #993–94.)  Because the Court declines to adopt the Magistrate Judge's recommendation to remand based on the omitted

18

mental health limitation, the Court turns to whether remand is necessary on this ground.

To determine the persuasiveness of a medical opinion, an ALJ considers several factors. 20 C.F.R. § 404.1520c. The most important factors, which the ALJ must consider and articulate in his decision, are the supportability and consistency of the medical opinion in relation to the objective medical evidence. *Id.* § 404.1520c(b)(2). In his discretion, the ALJ may consider additional factors such as the medical source's specialization and relationship with the claimant. *Id.* § 404.1520c(c)(3–5). If the ALJ determines that two medical opinions are equally supported by and consistent with the medical record but are not exactly the same, then the ALJ must consider the additional factors. *Id.* § 404.1520c(b)(3).

For both the 2017 and 2018 questionnaires, the ALJ analyzed the persuasiveness of the medical opinions by considering and articulating their supportability and consistency with the medical record. Regarding the 2017 questionnaire completed by Nurse Kauffman and Dr. Hunt, the ALJ determined that the opinions were unpersuasive because they lacked support in Plaintiff's treatment records, which the ALJ determined generally indicated mild to mostly moderate symptoms of anxiety, depression, and posttraumatic stress disorder. (ECF No. 12, PageID #89.) Further, the ALJ determined that the opinions were inconsistent with the totality of the evidence, which the ALJ found showed improvement in Plaintiff's symptoms with prescribed medications. (*Id.*) Similarly, the ALJ determined that the

opinions of Nurse Brager and Dr. Tate contained in the 2018 questionnaire were unpersuasive for the same reasons.  (*Id.*, PageID #90.)

Plaintiff argues that the ALJ's conclusion that these opinions were not persuasive is not reasonable.  (ECF No. 13, PageID #941.)  Plaintiff points to evidence in the record that she contends supports the medical opinions.  (*Id.*, PageID #941–44.)  The ALJ considered the evidence to which Plaintiff points.  (*See* ECF No. 12, PageID #86–88.)  However, even if a preponderance of the evidence supports Plaintiff's position, the Court will not disturb the Commissioner's decision so long as substantial evidence also supports the conclusion by the ALJ reached.  *O'Brien v. Commissioner of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020).  Under this standard, the Court cannot reweigh the evidence.  *Jones v. Commissioner of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

The Court determines that substantial evidence supports the ALJ's determination regarding the persuasiveness of the medical opinions at issues.  The 2017 and 2018 questionnaires were check-box forms, on which the medical sources checked boxes and wrote cursory statements about the supporting clinical findings and Plaintiff's prognosis.  As a general matter, an ALJ may properly give little weight to a medical source's check-box form of functional limitations when it does not cite clinical test results, observations, or other objective findings.  *Ellars v. Commissioner of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (collecting cases).  Here, the ALJ detailed Plaintiff's treatment records and explained why he determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence in the record.  (ECF No. 12, PageID #85–87.)  Further, the ALJ relied on the medical opinions of State agency psychological consultants Dr. Waggoner and Dr. Edwards, which he found were consistent with the objective medical evidence.  (*Id.*, PageID #90.)

Finally, Plaintiff argues that the ALJ erred by failing to consider the additional factors in evaluating the medical opinions.  (ECF No. 13, PageID #945; ECF No. 17, PageID #969.)  However, an ALJ is only required to consider the additional factors where the ALJ determines that a medical opinion is equally supported by and consistent with the record as another conflicting medical opinion.  Because the ALJ determined that the 2017 and 2018 questionnaires were not consistent with or supported by the record, and were therefore unpersuasive, the ALJ was not required to consider the additional factors.

In sum, the ALJ evaluated the medical opinions at issue using the two required factors, supportability and consistency, and found that both factors weighed in favor of discounting the opinions.  Substantial evidence supports the ALJ's conclusion that the functional limitations in the opinions were not supported by the record evidence.  Accordingly, regardless of whether the Court would reach a different determination, the ALJ did not err in his analysis of the medical opinion evidence.

## CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** the Commissioner's objection, **DECLINES TO ADOPT IN PART** the Magistrate Judge's Report and

Recommendation, and **AFFIRMS** the Commissioner's denial of benefits.  Further, the Court **DIRECTS** the Clerk to enter judgment accordingly.

      **SO ORDERED.**

Dated:  August 15, 2022

                                               _____

                                               J. Philip Calabrese
                                             United States District Judge
                                             Northern District of Ohio